UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT J. BURNETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:20-CV-968 NAB |
| | ) |
| KILOLO KIJAKAZI[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Robert J. Burnett's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand for further proceedings.

**I.      Background**

On March 6, 2018, Burnett applied for DIB and SSI, alleging that he had been unable to work due to disability since March 1, 2017. (Tr. 11, 195.) Burnett alleged disability due to fibromyalgia, spinal stenosis, arthritis, sleep apnea, and high blood pressure. (Tr. 227.) His

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

application was initially denied and he filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 119, 127.) On April 16, 2019, the ALJ held a hearing on Burnett's claim. (Tr. 23-48.) Burnett was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on July 31, 2019, the ALJ found Burnett was not disabled as defined in the Act from the alleged onset date through the date of the decision. (Tr. 8-22.) On August 13, 2019, Burnett filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 189-191.) On September 14, 2019, while the claim was pending before the Appeals Council, Burnett submitted additional evidence, namely a disability impairment questionnaire from Martin Walsh, M.D. dated June 7, 2017. (Tr. 49-55.) On June 19, 2020, the Appeals Council denied Burnett's request for review, and adopted the ALJ's decision in full. (Tr. 1-3.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the

claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Burnett met the insured status requirements of the Social Security Act through September 30, 2019, and that he had not engaged in substantial gainful activity since March 1, 2017, the alleged onset date. (Tr. 14.) Next, the ALJ found that Burnett has the following severe impairments: morbid obesity, fibromyalgia, osteoarthritis, gout, degenerative disc disease, and sleep apnea. The ALJ found that Burnett's hypertension, benign neoplasm of the transverse colon, history of internal hemorrhoids, and benign but precancerous colonic polyps status/post excision were not severe medical impairments. (Tr. 14.)

The ALJ determined that Burnett did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Burnett had the residual functional capacity to perform sedentary work with additional limitations. Specifically, the ALJ found that

> he can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; he can stand and walk 2 hours in an 8-hour day; and he can sit 6 hours in an 8-hour day. He can frequently balance; he can only occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; he can only occasionally reach overhead, bilaterally; he can never climb ladders, ropes or scaffolds; and he must avoid even moderate exposure to hazards.

(Tr. 15.) The ALJ found that Burnett is able to perform past relevant work as a Fraud Investigator (Dictionary of Occupational Titles (DOT) No. 376.267-014, skilled sedentary work) as Burnett actually performed it. (Tr. 17.) Therefore, the ALJ concluded that Burnett was not disabled, as defined in the Act, from March 1, 2017 through July 31, 2019. (Tr. 18.)

### IV. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—

4

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.     Discussion**

Burnett raises two overarching issues. First, Burnett argues the ALJ failed to fully and fairly develop the record. Second, Burnett argues that the RFC is not supported by substantial evidence in the current record. Defendant responds that the ALJ properly evaluated the evidence in a manner consistent with the SSA's regulations and policies, included all supported limitations in the RFC, and substantial evidence supports the ALJ's determination. Defendant further argues that the new evidence is insufficient to meet Burnett's burden of proof.

After the ALJ issued her decision on July 31, 2019, Burnett requested review by the Appeals Council and submitted additional evidence, namely a medical source statement dated June 7, 2017. (Tr. 1-3.)

5

Where a claimant submits new evidence and "the Appeals Council considers the new evidence but declines to review the case, [federal courts] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). In *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court.

*Id.* at 622.

Here, the Appeals Council denied review and stated that the medical source statement "does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (Tr. 2.) Because the Appeals Council considered the evidence but declined to review the case, Dr. Walsh's medical source statement shall be considered in determining whether substantial evidence in the current administrative record supports the ALJ's decision.

The new evidence reflects that on May 4, 2017, Burnett's prior counsel reached out to Dr. Walsh to request that he complete a form titled Disability Impairment Questionnaire. (Tr. 49.) Prior counsel's instructions included a page titled "Exertional Impairment Questionnaire" that provided Dr. Walsh with guidelines as to what combination of standing and sitting probably constitutes a disability under the Social Security Act. (Tr. 50.) Dr. Walsh signed and dated the form on June 7, 2017, and it was submitted to the Appeals Council on September 14, 2019. (Tr. 2, 55.)

In the Disability Impairment Questionnaire form, Dr. Walsh wrote that he first treated Burnett 20 years ago, and his most recent encounter with Burnett was the day he filled out the

6

form. Dr. Walsh wrote that Burnett has been diagnosed with fibromyalgia, degenerative joint disease, morbid obesity, and hypertension. (Tr. 51.) Dr. Walsh did not complete the section labeled "clinical and laboratory findings that support your diagnoses." (*Id.*) Dr. Walsh checked boxes to indicate that Burnett's ongoing impairments were expected to last at least 12 months, and that he is not a malingerer. Dr. Walsh reported Burnett's primary symptoms were that he was tired, had weakness, and pain all over. He described the pain as a constant ache. (Tr. 52.) Dr. Walsh reported that Burnett was on Lisinopril, and that Dr. Walsh has not substituted medications in an attempt to produce less symptomatology or relieve side effects. Dr. Walsh indicated there was no other treatment such as surgery or physical therapy. (*Id.*) Dr. Walsh indicated that Burnett can perform a job seated for less than one hour in an eight-hour workday, and that he can perform a job standing for less than one hour in an 8-hour workday. (Tr. 53.) He checked the box that it is medically necessary for Burnett to avoid continuous sitting in an 8-hour workday, but left blank two follow up questions regarding frequency of getting up and how long before he can return to a seated position. Dr. Walsh left blank the questions regarding whether Burnett requires leg elevation while sitting. (*Id.*) Dr. Walsh checked boxes that Burnett could occasionally lift or carry zero to five pounds, and could never lift or carry more than 10 pounds. Dr. Walsh indicated that Burnett has significant limitation in reaching due to shoulder arthritis and fingering due to stiff fingers. He checked the box that Burnett could "Never/Rarely" grasp, turn, and twist objects; use hands/fingers for fine manipulations; or use arms for reaching. (Tr. 54.) When asked if Burnett's symptoms will likely increase if he were placed in a competitive work environment, Dr. Walsh checked the box "no." He opined that Burnett would experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration frequently, from one-third to two-thirds of an 8-hour workday. (*Id.*) Dr. Walsh also opined that Burnett would need unscheduled breaks to rest at

7

unpredictable intervals of every 30 minutes or less. Dr. Walsh opined that Burnett would be absent from work more than three times a month, and that emotional factors contribute to the severity of Burnett's symptoms; however, Dr. Walsh left blank the follow up question regarding how emotional factors affect Burnett. (Tr. 55.) Dr. Walsh confirmed that in his best medical opinion, Burnett's symptoms and related limitations apply as far back as June 20, 2014.

The Court finds that Dr. Walsh's Disability Impairment Questionnaire form undermines the ALJ's decision. Dr. Walsh's opinion questionnaire was completed in June 2017, during the relevant time period and the opinion is material, as no other treating provider has provided any opinion on Burnett's functional capacity. The ALJ did not have an opportunity to review Dr. Walsh's opinion in rendering her decision, despite acknowledging that Dr. Walsh's records indicate that a "form for his disability" was filled out and his office intended to fax it to the lawyers. (Tr. 17, 327.) If the ALJ had conducted further inquiry, she might have discovered Dr. Walsh's opinion was not yet a part of the record and could have requested the opinion from Burnett's counsel and evaluated the opinion in making her determination.

Notably, the only medical opinion considered by the ALJ is the opinion of state agency physician James Schell, M.D. (Tr. 87-99.) Dr. Schell reviewed medical records, including a May 23, 2016 consultative exam conducted by Arjun Bhattacharya, M.D. (Tr. 90.) The 2016 consultative exam was a part of the record in Burnett's prior claim for disability, which was denied on February 28, 2017. (Tr. 75.) At the June 19, 2019 hearing before the ALJ regarding the present claim for disability, Burnett's counsel requested that the prior consultative exam be exhibited in this case. (Tr. 26-27.) The ALJ denied the request, finding no reason to reopen the February 28, 2017 decision, and stating that "any reference in this [2019] decision to evidence prior to February 28, 2017 is only for the purpose of discussing the history of and/or opinions regarding the

8

claimant's current impairments and does not constitute a reopening of the decision dated February 28, 2017." (Tr. 11.)

"It is erroneous for the ALJ to rely on items outside the record." *Pinegar v. Astrue*, No. 4:10-CV-643 CEJ, 2011 WL 2621670, at *10 (E.D. Mo. July 5, 2011) (citing *Albalos v. Sullivan,* 907 F.2d 871, 874 (9th Cir. 1990). Here, while the ALJ does not directly rely on an item outside of the record, she finds Dr. Schell's medical findings to be "persuasive" and explains that he "supports his findings with evidence *cited from the record* that the undersigned finds is generally consistent with the evidence as a whole." (Tr. 17 (emphasis added)). However, Dr. Schell's opinion explicitly references and relies on evidence not in the record, namely the 2016 consultative exam. (Tr. 90-91, 96.) Dr. Schell explicitly stated that the manipulative limitations he recommends in the RFC adopted by the ALJ are based upon the consultative exam. (Tr. 96.) The ALJ correctly stated that she is not required to make the prior file medical records a part of the record in this case. Nevertheless, the only opinion evidence in the record, an opinion the ALJ found persuasive in determining the RFC, was based on a consultative exam that the ALJ declined to include in the record, despite counsel's request that it be added to the record.

If the ALJ finds Dr. Walsh's Disability Impairment Questionnaire to be persuasive evidence, it will likely impact the evaluation of Burnett's RFC and/or the evaluation of the jobs he can perform. As Defendant points out, there are reasons the ALJ could find the opinion to be unpersuasive, including a lack of explanation and support within Dr. Walsh's questionnaire itself. Additionally, it appears that Dr. Walsh may have filled out the questionnaire with input from Burnett at his June 7, 2017 visit, perhaps calling into question whether the bases for the opinions were subjective statements from Burnett himself. (*See* Tr. 327.) However, it is not the undersigned's duty to reweigh the evidence. The question for the Court is whether there is a

9

reasonable likelihood that the ALJ's decision would be different in light of the additional evidence. Under these circumstances, remand is appropriate so that the ALJ has the opportunity to determine the Disability Impairment Questionnaire's relevance to Burnett's claim, to further develop the medical record, if necessary, and to determine whether or not benefits should be awarded. *See, e.g., Rita H. v. Saul*, No. 4:18 CV 1605 JMB, 2019 WL 3322981, at *10 (E.D. Mo. July 24, 2019) (remanding to the ALJ to consider new and material medical questionnaire to determine the relevance to Plaintiff's claim); *Sluka v. Colvin,* No. 4:13 CV 948 ACL, 2014 WL 4814687, at *14 (E.D. Mo. Sept. 24, 2014) (remanding to the ALJ to consider relevant new evidence, formulate a new RFC, and further develop the evidence, if necessary, where new evidence did not support the ALJ's RFC determination).

## VI. Conclusion

The Court finds that this case should be remanded to allow the ALJ the opportunity to consider material evidence unavailable to the ALJ at the time of her decision. Upon reconsideration of appropriate evidence, the ALJ may well determine that Burnett is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 22.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

 

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2022.